*97
 
 Bacoít, J.
 

 Tlie object of the suit is to enforce a liability arising from the provisions' of the act passed April 12, 1852, for the incorporation of .companies formed.to navigate the ocean by steamships. T,he 6th section of .that act provides, in substance, that the stockholders of any such- company shall be liable to the creditors of such corporation to an amount equal to ,the stock held by them respectively, until the amount of .the capital stock shall foe paid in. A subsequent -section attaches this liability to every owner of stock, although he does not appear upon the books to be a corporator. Aud the 8th section of the act requires as a pre-requisite to the attaching of any such -liability, that a suit shall -have been brought for ,any debt claimed against .the corporation, and an execution returned unsatisfied in whole or in part.
 

 The complaint avers all .the necessary facts which are claimed to create the liability; and, among others, that a judgment was duly recovered against,the Mexican Ocean Mail and Inland .Company, in which company the defendants in this suit were the equitable .owners of three hundred and seventy-five shares of stock at the time of .the creation of the debt upon which the judgment was recovered; the issuing of an execution thereon and its return unsatisfied. In relation to the averments of the complaint, as to the indebtedness and the judgment founded upon it, .the answer simply ignores any knowledge or information, and sets up in respect .to them no substantive or affirmative defence.
 

 Upon the trial it is stated that the judgment roll, the execution and the sheriff’s return were read as stated in the complaint, .which appears to havefoeen done without objection; and ■the referee in his report finds .the fact of the recovery of such judgment, and the issuing and return of execution thereon. The .roll is .not set forth in the Case, nor does it appear whether -the recovery .was obtained upon a contested trial, by confession or default. -The legal conclusion of the referee, by which he finds the plaintiff entitled to judgment, evidently' proceeds upon the assumption that the judgment rendered against the company was
 
 prima fade
 
 evidence of the debt; and ho further
 
 *98
 
 proof was required, either as to the origin, existence or nature of that indebtedness. If he was right in this conclusion, then the report is right, and we are not required to go behind the judgment to inquire whether a prior legal liability ever in fact attached to the corporation.
 

 Upon principle, and as the fair result of all the authorities on this point, I am satisfied that the referee came to a just conclusion. • The question first arose and was decided in 1822, in the case of
 
 Slee
 
 v.
 
 Bloom
 
 (20 Johns., 669), under an act of 1811, imposing a personal liability upon stockholders of a dissolved corporation, for all debts due and owing at the time of the dissolution. There was no clause in this act requiring a preliminary action against the company to recover the debt, but the directors of the company had liquidated the demand of the plaintiff, and given him a judgment by confession. The question was, whether that judgment was sufficient evidence of the indebtedness, unless impeached by proof of mistake or fraud. Chancellor Kent originally held that the judgment, although binding upon the company in its corporate capacity, was not upon the defendants when the statute liability was sought to be enforced; and that the acts of the trustees of the corporation were not the acts of agents or trustees of the individual stockholders.
 

 In the Court of Errors this decision was reversed, and in the opinion of Chief Justice Spenceb, which is the only , one given in that court, the ground is maintained that the defendants were chargeable with the debt, on the principle that the trustees, as the agents of the stockholders, had contracted the debt and fixed the liability, and that the latter could impeach the consideration of the indebtedness upon no other ground than that of fraud or error in the liquidation; nor could this be done without laying a proper foundation for it in the pleadings. “We must regard the judgment,” he says, “ as a solemn admission of indebtedness; but it is not binding as
 
 res judicata
 
 upon the stockholders if it was procured by fraud, or is founded in error.”
 

 The rule of law thus laid down by' the court of last resort*
 
 *99
 
 was directly recognized and approved by the Supreme Court in the case of
 
 Moss
 
 v.
 
 Oakley
 
 (2 Hill, 265). That was a suit against a stockholder of the Rossie Lead Mining Company to enforce a personal liability, under the act creating the company; the provision being almost identical in language with the one in the act we are now considering. The declaration in that case alleged simply the execution of a promissory note by the company, and that a judgment was recovered upon it, execution issued and returned unsatisfied. The same objection was taken that the judgment was not sufficient evidence of indebtedness, and that the facts authorizing the giving of 'the note should have been averred in the pleadings. But Bronson, J.,in giving the opinion of the court, says: “ As against the company, the judgment is conclusive evidence that the note was valid, and although the defendant was not directly a party, yet as a stockholder he was not altogether a stranger to the judgment. As against him, I think the declaration makes out a
 
 prima facia
 
 case of indebtedness by the company." And in support of this proposition, he cites the case of
 
 Slee
 
 v.
 
 Bloom,
 
 approvingly.
 

 Thus the rule stood unquestionably until 1843, when the case of
 
 Moss
 
 v.
 
 McCullough
 
 (5 Hill, 131), was decided. In that case Cowen, J,, started a new doctrine, to wit: that the stockholders were substantially guarantors of .the debts of the company; and this being a position regarded with somewhat of indulgence, and requiring a strict performance of all precedent conditions, it was held that the original indebtedness of the company must be strictly proved, and that the judgment recovered against the corporation was not conclusive, nor even
 
 prima fade
 
 evidence of the validity of the debt. The cáse went back for a new trial, and upon that trial the judgment was again given in evidence, together with proof tending to show the consideration of the note upon which the judgment had been recovered, and the manner of its execution, &c. A verdict having been rendered for the plaintiff, the case went to the Supreme Court, where the judgment was affirmed, and it was then carried by writ of error to the Coqrt of Errors, where it
 
 *100
 
 was reversed by a vote of eleven to eight (5 Denio, 567).. That reversal, however, as the report of the case discloses, turned entirely upon other questions, and, as the marginal note shows, brought under discussion the power of corporations to give promissory notes, and what was sufficient proof of authority to one who acts professedly as the agent of the corporation. The question of the character of the evidence afforded by the production of the judgment record, is only incidentally spoken óf by Senator Pott, who gives the leading opinion, while in none of the other opinions i.s any allusion whatever made to it.
 

 The ease went hack .once more for trial to the circuit, where the defendant prevailed, but came .again before the Supreme Court at general term, in the third district, where, upon an opinion given by Willard, J,, a new trial was again granted. In this opinion (7 Barb. S. C. R., 279), Mr. Justice Willard takes occasion to re-state and vindicate the decision made by him originally at the circuit, in which, following the rule established in
 
 Slee
 
 v. Bloom, he held the judgment recovered against the 'company
 
 prima, facie
 
 evidence of the indebtedness, only liable to be impeached for fraud or mistake. He shows also that the .authority of that ease is not in .any degree shaken by the decision of the Court of Errors, in
 
 McCullough
 
 v.
 
 Moss
 
 (5 Denio, 567). This is the latest reported authority in our .courts. It does not appear what was the ultimate' fate of this •.case, which had been .some.seven or eight years on its travels to and feo through the courts; hut we are informed in the .opinion given in this case by the Superior Court of Hew York, that a case precisely similar in its features was tried in' the third district, and the same rule as above stated was .declared to he the law. .of the case. From this judgment I understand an appeal was taken to the Court of Appeals, and after three arguments the judgment was affirmed .upon an equal division fif the court,
 
 (Moss
 
 v.
 
 Averell,
 
 6 Seld., 449.)
 

 This being the state of things in reference to .this question, :U,n opportunity is fairly presented ■ to reaffirm the law as declared nearly forty years .ago by the highest, legal .tribunal in
 
 *101
 
 the State, and which remained unquestioned for over twenty years, or now to declare the rule henceforth to be that a judgment recovered in any manner against a corporation is not in the least degree evidence of any indebtedness by the corporation. I think we should adhere to the original rule, which stands upon the highest authority, and can be fairly vindicated on principle. All that a creditor of a company, seeking to enforce this personal liability upon a stockholder, is required to prove, is the existence of the debt, and that judgment has been obtained, and execution issued and returned as the statute requires. A judgment against a corporate body is one of the highest evidences of indebtedness known to the law; it is a solemn admission by record that the corporation owes the sum claimed in the suit. Nor do I think it necessary that it should be found, or that we should assume, that it was an adversary judgment, if by that is meant that it was only rendered upon the trial of an issue contesting the claim. A judgment by confession, in the absence of any pretence of fraud or collusion, is just as conclusive upon a corporation as one rendered after litigation; and a judgment by .default is only another mode of declaring by. a record estoppel that the corporate body has no just defence, and can say nothing in bar of the claim preferred against it. And therefore, where as in this case acceptances are proved to have been made by the company, and a judgment has been rendered upon such acceptances, and no evidence whatever has been given to show that such acceptances were for an unauthorized or illegal purpose, and no attempt to impeach the judgment for collusion, fraud or mistake, the creditor has fairly made out his case, and the liability of the stockholder is maintained. ' ■ •
 

 I will only add that I had occasion to examine the law upon this subject, in a case before me at special term, some years ■ since, and came to the conclusion, with Judge Willard, that the rule in
 
 Slee
 
 v.
 
 Bloom
 
 was still the law of this State, and so held. The case is reported in 9 Howard Special Term R., 436, which I do not, of course, cite as an authority in this court; but as the judgment, was affirmed, and the opinion adopted by
 
 *102
 
 the general terra in the fifth district, it has the sanction of that tribunal, and therefore, it may perhaps be said of it in this aspect, “
 
 valeat quantum valere potest.”
 

 Arriving at this result, it may not be material to examine the questions made upon the argument which go behind the judgment, and attempt to attack the foundation on which it rests, although my conviction is that there is no serious difficulty, even in that aspect of the case, in maintaining the propriety of the report. The conclusions of fact by the referee are either amply sustained by the evidence, or there is at all events enough to warrant him in finding, as he does, that the defendants were equitable owners of the stock, and that the bills of exchange were duly drawn upon and accepted by the company. This would be sufficient to raise a presumption that the acceptances were made not only for a lawful purpose, but upon a sufficient consideration, and the duty would be cast upon the defendants to show thatthey were given for illegitimate purposes, entirely foreign to the objects, and beyond the powérs of the corporation. So far from proving any such state of facts, the evidence rather establishes the conclusion that the acceptances were given for rolling stock procured for the use of the company, an object not only lawful, but indispensable to the operations of the association. Upon all the facts, the report of the referee is right, irrespective of the conclusion of law which holds the proof of the judgment
 
 prima fade
 
 evidence of indebtedness on the part of the company. The judgment should be affirmed.
 

 Denio and Clerke, Js., concurred fully in the above opinion ; all the judges were for affirmance upon the grounds that there was no error in the admission of evidence, or in the refusal of a nonsuit, but Comstock, Ch. J., Selden, Davies and Welles, Js., refused to commit themselves to the doctrine that a judgment against the corporation is even
 
 prima fade
 
 evidence against a stockholder.
 

 Judgment affirmed.